UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
YEONTAI WON, and JUNG HYUNG SONG,
*on behalf of themselves and all other*
*similarly situated,*

                    Plaintiffs,

-against-

GEL FACTORY, CORP., d/b/a Gel Factory;
KEUM HEE KANG, a/k/a Tammy Kang, and
KEUM OK KANG, a/k/a Kay Ka*ng,*

                    Defendants.
---------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 20-5269 (EK) (ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiffs, Yeontai Won ("Won") and Jung Hyung Song ("Song") commenced this putative collective action on November 2, 2020, against the defendants, Gel Factory, Corp., d/b/a Gel Factory ("Gel Factory"), Keum Hee Kang, a/k/a Tammy Kang, and Keum Ok Kang, a/k/a Kay Ka*ng*  (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 et seq. ("NYLL").  By Order dated May 18, 2021, District Judge Komitee referred  Plaintiffs' motion for a default judgment and Plaintiffs' motion for attorneys' fees for a report and recommendation.  For the reasons set forth below, the undersigned respectfully recommends that the motion be granted, and that the plaintiffs be awarded damages in the following amounts: (1) $3,294.06 in unpaid minimum wages; (2) $960.30 in unpaid overtime; (3) $4,254.36 in liquidated damages; (4) $7,050 for wage notice violations and $10,000 for wage statement violations; (5) $6,526.93 in prejudgment interest; and (5) $10,385 in attorneys' fees and $ 785 costs.

# BACKGROUND

### A.    Factual Averments

The defendant Gel Factory is a corporation organized under the laws of the State of New York with a primary place of business in East Northport, New York.  Compl. ¶ 9.  According to the complaint, Gel Factory is engaged in interstate commerce due to the fact that it purchased and handled goods moved in interstate commerce.  *Id.* ¶ 11.  Plaintiffs also assert that Gel Factory's annual gross revenue has exceeded $500,000.00 in each of the years at issue.  *Id.* ¶ 10.  Keum Hee Kang, a/k/a Tammy Kang, and Keum Ok Kang, a/k/a Kay Kang (the "Individual Defendants") are alleged to be owners, directors, managers and/or majority shareholders of the Gel Factory.  *Id.* ¶ 12.  Plaintiffs also assert, that Keum Hee Kang a/k/a Tammy Kang (known as Lady Boss to Plaintiffs) is the License holder of the Appearance Enhancement Business license of  Gel Factory, and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Gel Factory.  *Id.* ¶ 13.  Plaintiffs also allege that Keum Ok Kang a/k/a Kay Kang (also known as Lady Boss to Plaintiffs) (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Gel Factory.  *Id.* ¶ 15.  Finally, Plaintiffs claim that one of the twin sisters paid Plaintiffs and other nail salon employees every week.  *Id.* ¶¶ 16-17.

Plaintiff Yeontai Won was employed by Defendants to work as a Nail Technician from April 06, 2019 to January 18, 2020.  *Id.* ¶ 7.  According to Won, from April 6, 2019 through January 18, 2020, for about 60% of the time, she worked from 9:30a.m. to 7:15p.m. for

four days a week, for 30% of the time, she worked from 9:30a.m. to 7:15p.m for five days a week and for 10% of the time, she worked from 9:30a.m. to 7:15p.m for six days a week. *See* Affidavit of Plaintiff Yeontal Won in Support of Motion for Default Judgment, dated April 12, 2021, ("Won Aff.") attached to the Troy Dec. at Exhibit 8, ¶8.  Thus, according to Won, from April 6, 2019 through January 18, 2020, her average work schedule was 44 hours per week. *Id*. ¶ 9.  Won contends that she did not have a fixed time for lunch or for dinner and the she had ten to fifteen minutes to eat lunch and even then she was on call, meaning that if customers came into the Gel Factory, her break stopped and she had to continue to serve customers. *Id*. ¶¶ 10-11.  According to Won, from April 6, 2019 to January 18, 2020, she was paid a flat compensation at a daily rate of $110.00 per day, minus $10.00 per day for "Lunch Hour" even though she did not get a one-hour break for lunch. *Id*. ¶ 12.  Won claims she was not paid for overtime and that she was never informed of her hourly pay rate or any tip deductions toward the minimum wage. *Id*. ¶¶ 14-15.  In addition, Won states that throughout her employment with Defendants she performed non-tipped work which included, cleaning the floor, mopping the floor, mopping the table, folding the napkins, cutting the paper and performing sanitation twice a day. *Id*. ¶ 16.  She claims that the non-tipped work exceeded two hours or twenty percent of her workday. *Id*. ¶ 17.  Plaintiff Won further states that throughout her employment, she was not given a statement with her weekly payment reflecting the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Korean, her native language. *Id*. ¶ 18.  She also states that throughout her employment, she was not compensated at least at one-and-one half of her promised hourly wage for all hours worked above forty (40) in each workweek. *Id*. ¶ 19.

Plaintiff Hung Hyang Song was also employed by Defendants to work as a Nail Technician from February 26, 2017 to January 6, 2020. Affidavit of Plaintiff Jung Hyung Song in Support of Motion for Default Judgment, dated April 12, 2021 ("Song Aff."), attached to the Troy Dec. at Exhibit 9, ¶ 8. Her affidavit is very similar to the affidavit provided by Plaintiff Won, however, Plaintiff Song states that from February 26, 2017 to January 6, 2020, her regular work schedule ran from 9:30a.m. to 7:15p.m. for four days a week for a total of thirty-eight hours each week. *Id*. She also did not have a regular lunch break, limited to 5-10 minute breaks. *Id*. ¶¶ 9-10. Plaintiff Song states that from February 26, 2017, to December 31, 2017, she was paid a flat compensation at a rate of $110.00 per day but that Defendants deducted $10 per day from her pay claiming it was for "lunch hour," resulting in weekly pay of $400 per week. *Id*. ¶¶ 11-13. From January 1, 2018, through December 31, 2018 she was paid $120.00 dollars per day, which was then subject to the daily $10 reduction resulting in $440 per week. *Id*. ¶¶ 12-16. From January 1, 2019 through January 6, 2020, Plaintiff Song was paid a daily rate of $130 per day, again subject to the $10 daily reduction, resulting in weekly compensation $480.00 per week. *Id*. ¶¶ 17-19. Plaintiff Song also claims she was never informed of her hourly pay rate or any tip deductions toward the minimum wage. *Id*. ¶¶ 21. In addition, Song states that throughout her employment with Defendants she performed non-tipped work which included, cleaning the floor, mopping the floor, mopping the table, folding the napkins, cutting the paper and performing sanitation twice a day. *Id*. ¶ 22. She claims that the non-tipped work exceeded two hours or twenty percent of her workday. *Id*. ¶ 23. Plaintiff Song further states that throughout her employment, she was not given a statement with her weekly payment reflecting the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made

from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Korean, her native language. *Id*. ¶ 24.

### B.    Procedural History

Plaintiffs commenced this action by filing a class and collective action complaint on November 2, 2020.  According to Plaintiffs, on December 4, 2020, they served Gel Factory and the Individual Defendants with a copy of the summons and complaint.  ECF No. 18, Troy Dec. ¶¶ 6, 7, Ex. 2, 3, 4.  Defendants failed to answer or otherwise respond to the complaint.  On March 25, 2021, Plaintiffs requested  entry of a default.[1]  ECF No. 15.  The certificate of default as to all three Defendants was entered on April 4, 2021.  ECF No. 16.  Plaintiffs moved for default judgment on May 17, 2021.  ECF No. 17.  Plaintiffs also moved for attorneys' fees and costs. ECF No. 20.  Plaintiffs have submitted the Declaration of John Troy ("Troy Dec.") along with attached exhibits and affidavits of Plaintiffs, and a memorandum of law in support of their motion for a default judgment and damages.  Plaintiffs have filed a separate motion for attorneys' fees, and second declaration of John Troy ("Attys fee Dec.") attaching a description of each attorneys' background as well as contemporaneous time records, and a memorandum of law.  ECF Nos. 21, 22.  By Order dated May 18, 2021, Judge Komitee referred Plaintiffs' motions to the Judge Tomlinson.  On November 12, 2021 this matter was reassigned to the undersigned.  Defendants have not opposed the motion for default judgment or the motion for attorneys' fees, indeed, Defendants have not responded in any way.

### DISCUSSION

### A.    Legal Standard Governing Default Judgments

---

[1] Plaintiffs never sought to conditionally certify this matter and are seeking a default judgment and damages solely of behalf of the two named Plaintiffs.

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law' " prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'" *Pena v. Super Econ. One Way Supermarket Corp.*, No. 20 CV 3060 MKB PK, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), report and recommendation adopted sub nom. 2021 WL 4398204

(E.D.N.Y. Sept. 25, 2021) (*citing Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011)

("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the

employee's recollection and estimates of hours worked are presumed to be correct.") (quotations,

citations, and alterations omitted)).

### B.   Federal and State Wage Laws

The FLSA requires employers to pay their employees the statutory minimum wage as well

as a premium (one and one-half times the regular rate) for hours worked above 40 hours per week.

29 U.S.C. §§ 206, 207.  The NYLL mirrors the FLSA in most but not all respects.  The NYLL

also requires employers to pay at least a minimum hourly rate to employees and mandates a

similar premium for overtime compensation, but the state law additionally requires that an

employee be paid a "spread-of-hours" premium equal to one hour of pay at the statutory minimum

wage for each day an employee works over ten hours.  NYLL § 650 et seq.; N.Y. Comp. Codes R.

& Regs. ("NYCRR") tit. 12 §§ 142–2.2, –2.4.

The FSLA and NYLL both provide for an additional award of liquidated damages to

plaintiffs who establish that their employer has failed to pay required wages.  Specifically, an

employer who violates the federal minimum wage and overtime provisions "shall be liable" to

employees for unpaid minimum wages and overtime in "an additional equal amount as liquidated

damages." 29 U.S.C. § 216 (b).10.  Pursuant to the NYLL, employees may also recover liquidated

damages of 100% of wages owed unless "the employer proves a good faith basis for believing

that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1–a).

Finally, under the NYLL, employees must be provided a written notice of their pay when

they are hired and wage statements for each payment of wages.  *See* N.Y. Lab. Law §§ 195(1),

195(3), 198(1).  Pursuant to section 198(1-b) of the NYLL, an employee who, within ten business

days of his or her first day of employment, was not provided with notice in accordance with section 195(1) of the NYLL, is entitled to statutory damages of $50 per day during which the violation occurred, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Section 198(1-d) of the NYLL provides that, with respect to the regular wage statements required pursuant to section 195(3), an employee who has not been provided with such a statement is entitled to recover statutory damages of $250 per day, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).

## 1.     Employer Status

In order to establish liability under the FLSA, the plaintiffs must prove either individual liability or enterprise liability. *See Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *4 (E.D.N.Y. Mar. 29, 2017). Individual liability applies to any individual "engaged directly in interstate commerce or in the production of goods for interstate commerce." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12 CV 5565 PKC RER, 2018 WL 1513628, at *3 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985)). To determine who qualifies as an "employer" for purposes of individual liability, the Second Circuit looks to the factors set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), which are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Coley*, 2018 WL 1513628, at *4. In contrast, enterprise liability applies to entities that: "(1) perform related activities "for a common business purpose"; (2) have "employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by

any person"; and (3) have an "annual gross volume of sales made or business done [ ] not less than $500,000." *Id* *3 (quoting 29 U.S.C. § 203(r)–(s)).  The courts in this Circuit had often held that the plaintiffs' allegations are sufficient to establish both individual and enterprise liability under the FLSA.

In this case, Plaintiffs allege that the Gel Factory engaged in interstate commerce due to the fact that it purchased and handled goods moved in interstate commerce and had revenues in excess of $500,000.  Compl*. ¶ 11.  Plaintiffs also assert that the Individual Defendants had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determin the rate and method of payment, and maintained employee records at the Gel Factory.  *Id.* ¶¶ 13-15.

Based on the allegations in the complaint and Plaintiffs' affidavits, the undersigned finds that the Gel Factory and the Individual Defendants were Plaintiffs' employers under the FSLA.  Although Plaintiffs have asked the Court to infer that the Gel Factory is engaged in interstate commerce simply by virtue of the fact that uses goods originating from outside of the state, the Gel Factory has forfeited any contention that Plaintiffs' are not entitled to the protection of the FLSA given its default.  *See Gunawan v. Sake Sushi Rest*., 897 F. Supp. 2d 76, 86 (E.D.N.Y. 2012); *see also Huerta v. Victoria Bakery*, No. 10 CV 4754 RJD JO, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York.").

In addition, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations.  *Rodriguez v. Ridge Pizza Inc.,* No. CV 16-254 (DRH) (AKT), 2018 U.S. Dist. LEXIS 42862, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (citing *Guardado v.*

*13 Wall St., Inc.,* No. 15-CV-2482, 2016 U.S. Dist. LEXIS 167887, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), report and recommendation adopted by, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).  Moreover, the NYLL definition of "employer" differs slightly from the FLSA definition in that it "does not require that a [d]efendant achieve a certain minimum in annual sales or business in order to be subject to the law.'" *Id.* (citing *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015).  "Under the NYLL, 'an employee is simply defined as 'any individual employed or permitted to work by an employer in any occupation.'" *Id.*  As such, the Court's analysis under the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee, 'as opposed to the economic reality of the situation.'" *Id*  For these reasons, the undersigned finds that Plaintiffs have also established the existence of an employment relationship within the meaning of the NYLL.

### 2. Employee Status

To establish a claim under the FLSA, Plaintiffs must also show that they are "employees" of Defendants within the meaning of the FLSA.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015).  For the purpose of this default motion, Plaintiffs qualify as employee based on their allegation that they were employed as nail technicians from 2017 to 2020.  *See id.* (citing *Garcia v. Badyna*, No. 13 Civ. 4021 (RRM) (CLP), 2014 U.S. Dist. LEXIS 133722, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) ("Insofar as Plaintiffs' Complaint alleges that Defendants employed Plaintiffs within this statutory meaning, "[i]t follows . . . that for purposes of this default, [they] qualif[y] as ... 'employee[s]' under the FLSA.")).  Similarly, to recover under the NYLL, Plaintiffs must establish that they were "employees" as defined by the statute.  *Id.*  In fact, Plaintiffs' burden in establishing that they are "employees"

entitled to NYLL protections is nearly identical to the burden under the FLSA.  *Id.*  In this case, there is no question that Plaintiffs quality as employees under both statutes.

     **3.**     **Statute of Limitations**

Before turning to Defendants' actual liability under the statutes, the Court must address the relevant statute of limitations.  The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  The NYLL establishes a six-year limitations period.  *See* N.Y. Lab Law §§ 198(3), 663(3).  Because Pplaintiffs have asserted claims under both the FLSA and NYLL, relief is available under either statute.  *See Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 676 (S.D.N.Y. 2011).  The undersigned will, therefore, employ the NYLL for the purposes of unpaid minimum wage claims and unpaid overtime claims which covers all of Plaintiffs' claims from February 2017.

     **4.**     **Failure to Pay Minimum Wage Under the FLSA and NYLL**

Both federal and New York State laws mandate employers pay their employees a minimum wage for the first 40 hours that employees work each week.  *See* 29 U.S.C. § 206(a)(1); N. Y. Lab. Law § 652(1).  For all time relevant to this litigation, Defendants were required to pay Plaintiff the federal minimum hourly wage of $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C) (mandating a minimum wage of $7.25 an hour as of July 24, 2019).  New York State minimum wage for workers in Nassau and Suffolk Counties, however, required a higher hourly minimum wage.  Specifically, Defendants were obligated to pay, in 2017, $10.00 per hour, in 2018, $11.00 per hour, in 2019, $12.00 per hour and in 2020, the New York minimum wage for Long Island was $13.00 per hour.  *See* N.Y. Lab. Law § 652(1).  An employer who fails to meet minimum wage obligations under the FLSA and the NYLL "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional amount as

liquidated damages." [2]  29 U.S.C. § 216(b); *See* 12 N.Y.C.R.R. § 143-1.3.  "Where, as here, an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be 'calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.'" *Shanfa Li v. Chinatown Take-Out Inc.*, 812 Fed.Appx. 49, 52 (2d Cir. 2020) (quoting 12 N.Y.C.R.R. § 146-3.5(b)).  "If the employee's regular hourly rate falls below the minimum wage, he is entitled to recover in backpay the difference between what he actually was paid and what he should have been paid for his first forty hours of work each week under the prevailing minimum wage." *Marin v J&B 693 Corp.* , No. 19-CV-00569 (JGK) (KHP), 2022 US Dist LEXIS 11521 (S.D.N.Y. Jan. 21, 2022).

Here, the complaint alleges that Plaintiff Won worked for Defendants from April 6, 2019 through January 18, 2020.  Won Aff. ¶ 7.  During this period Plaintiff was entitled to $12.00 per hour from April 2019 through December 30, 2020 and $13.00 per hour from December 31, 2019 through January 18, 2020.  Plaintiff's hourly wage from during the period was $10.25 per hour – Plaintiff Won states she was paid $100 per day, after the deduction for a lunch break she did not receive and that she worked 9.75 hours per day.  *Id*. ¶¶ 10-11.  According to Plaintiff Won, 60% of the time she worked four days a week, 30 % of the time she worked five days a week and 10%

---

[2] Plaintiffs were both employed as nail technicians, a position that would typically involve tips.  "The FLSA's tip credit provision permits employers to pay tipped employees at an hourly rate below the minimum wage if the employee's wages and tips, added together, meet or exceed the minimum wage. 29 U.S.C. § 203(m) (2012)." *Baiguang Han v. Shang Noodle House*, No. 20-CV-2266 (PKC) (VMS), 2021 U.S. Dist. LEXIS 159919, 2021 WL 3774186, at *8 (E.D.N.Y. Aug. 24, 2021).  "To be eligible for the [FLSA] tip credit, however, the employer must first notify the employees of its intention to include tip income when calculating wages actually paid for minimum wages purposes." *Jin Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 CV 3725, 2010 U.S. Dist. LEXIS 109373, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (citation omitted). The same rules apply under the NYLL.  *Id*.  Plaintiffs in this case aver that defendants failed to notify them of a tip credit under either the FLSA or the NYLL. Therefore, "no tip credit can be taken and the [defendant is] liable for the full minimum-wage." *Chan v. Sung Yue Tung Corp.*, No. 03 CV 6048, 2007 U.S. Dist. LEXIS 7770, 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007) (quoting *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994))

of the time she worked six days a week but she was paid $100 per day. *Id*. ¶8.  Thus, given that Won was employed for 41 weeks, 24.6 weeks she worked four day, 12.3 weeks she worked five days and 4.1 weeks she worked six days, for an average work week of 43.88 hours per week. Plaintiffs have provided a damage calculation, however, the Court notes that Plaintiffs have not used the correct minimum wage for 2017-2020, requiring the Court to undertake the damage calculation independently.  According to the information provided by Plaintiff, she was paid, on average, $449.77 per week for 38 weeks in 2019 ($17,091.26) and should have been paid $526.56 per week ($20,009.28), therefore her damages for 2019 were $2,918.02.  For the three weeks she worked in 2020, she was paid $1,349.39 and should have been paid $1,711.31, for additional damages of $361.98.  Thus, the undersigned respectfully recommends default judgment be entered on this claim and that Plaintiff Won be awarded damages on her claim that she was paid less than minimum wage of $3,280.00.

With respect to Plaintiff Song, she worked for Defendants from February 26, 2017 through January 6, 2020.  Sonf Aff. ¶ 8.  During this period, pursuant to the New York minimum wage law, Plaintiff was entitled to $10.00 per hour from February 2017 through December 30, 2017, $11.00 per hour from December 31, 2017 through December 30, 2018, $12.00 per hour from December 31, 2018 through December 30, 2019, and $13.00 per hour from December 31, 2019 through January 6, 2020.  Plaintiff Song's hourly wage from during the period was

February 2017 – December 2017 -  $10.50 per hour[3]

January 2018 – December 2018 - $11.57 per hour

January 2019 – January 2020 - $12.63 per hour

---

[3] Plaintiff Song states she was paid $100 per day, after the deduction for a lunch break she did not receive and that she worked 38 hours per week.  Song Aff. ¶¶ 8, 13.  Similar calculations, reflecting her increase in pay each year, were used for the remaining periods.

Thus, Plaintiff Song's hourly wages were above the minimum wage for all period other than one week in 2020.  Thus, the undersigned respectfully recommends default judgment be entered on this claim and that Plaintiff Song be awarded damages on her claim that she was paid less than minimum wage of $14.06.

### 4.    Unpaid Overtime

Plaintiffs also allege that Defendants violated the NYLL's overtime provisions by failing to pay overtime wages to Won.  Compl. ¶¶77-89.  Specifically, Plaintiff Won claims that Defendants compensated her at her regular hourly rate without any premium compensation for those hours worked in excess of her first 40 per week.  *See*  Won Aff. ¶ 19.  In her affidavit, Won does not specify the amount of compensation owed as a result of Defendants' failure to pay overtime, rather Plaintiff avers that "my attorney relayed to me that due to (1) unpaid overtime compensation (2) unlawfully deducting pay for lunch break, I am entitled to FLSA Damages in the amount of Four Thousand Eight hundred Ten Dollars and Eighty-Two cents ($4,810.82)."  Won Aff. ¶26.  Won sets forth the hours worked during the course of her employment and alleges she worked 39 hours a week 60% of the time, 48.75 hours a week for 30% of the time and 58.5 hours per week 10% of the time.  This averages to 43.88 hours per week over the course of her 41-week employment.  As stated above, the NYLL regulations state that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate...."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  As employers subject to the NYLL, Defendants are consequently liable for Plaintiffs' properly pled violation of the statute's overtime requirements.

Because Plaintiff "was unlawfully paid less than the minimum wage, the overtime calculation must be based on the minimum wage to which she was entitled."  *Cao v. Chandara*

*Corp.*, No. 00 Civ. 8057(SAS), 2001 U.S. Dist. LEXIS 8631, 2001 WL 34366628, at *6 (S.D.N.Y. July 25, 2001); *See also Marin v J&B 693 Corp.*, 2022 US Dist LEXIS 11521 ("if a Plaintiff's regular hourly rate fell below the minimum wage, that Plaintiff is entitled to overtime damages equal to one and one-half times the minimum wage rate").  Thus, unpaid overtime wages for Won are calculated as follows:

$6.00 which is half the applicable minimum wage for 2019, x 3.88 hours of overtime per week x 38 weeks worked in 2019 for a total of $884.64; and

$6.50 which is half the applicable minimum wage for 2020, x 3.88 hours of overtime per week x 3 weeks worked in 2020 for a total of $75.66.

Accordingly, the undersigned finds that a default judgment against Defendants for failure to pay overtime is appropriate under the NYLL.  The undersigned, therefore, recommends that the motion be granted and that Won be awarded $960.30.

### 7.   Liquidated Damages

Both federal and state law provide for an additional award of liquidated damages to plaintiffs who establish that their employer has failed to pay required wages.  While some court have "disagreed as to whether a plaintiff may secure cumulative awards of liquidated damaged under both statutes," the undersigned agrees with those courts that have concluded that a cumulative award should not be permitted.  *See Gunawan,* 897 F. Supp. 2d at 91 (E.D.N.Y. 2012) (citing *Greathouse v. JHS Sec., Inc.*, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (collecting cases and concluding that a cumulative award is not permitted)).  Here, Plaintiffs have only request liquidated damages under the NYLL.  Pls.' Mem. at 11.  Under the NYLL, employees may recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."

N.Y. Lab. L. § 198(1–a).  Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n. 3 (S.D.N.Y. 2012).  As such, the undersigned further recommends that the Won be awarded $4,240.30 in liquidated damages and Song be awarded $14.06 in liquidated damages for a total award of $4,254.36.

### 8.    The NYLL Wage Notice Statutory Penalties

**P**laintiffs also seek damages due to Defendants' failure to provide them with written notice of their pay when they were hired and wage statements for each payment of wages under Section 195 of the NYLL. N.Y. Lab. Law §§ 195(1), 195(3).  For Defendants' initial failure to provide them with a written wage notice within ten business days of being hired, Plaintiff are entitled to recover $50 for each workweek that the violation continued, up to a statutory maximum of $5,000.  N.Y. Lab. Law § 198(1–b).  Plaintiff Won worked a total of 41 weeks and is entitled to $2,050.  Plaintiff Song worked a total of 149 weeks and is entitled to the statutory maximum of $5000.  Accordingly, the undersigned recommends that Plaintiff Won be awarded $2,050 and Plaintiff Song be awarded the $5,000 statutory maximum.

Plaintiffs are also entitled to recover $250 for each week that they did not receive a wage statement with their wage payment, up to a statutory maximum of $5,500. N.Y. Lab. Law § 198(1–d).  Therefore, the undersigned further recommends that Plaintiffs each be awarded $5,000 for workweeks in which they received no wage statement.

### 9.    Prejudgment Interest

Plaintiffs also seeks pre-judgment interest for their NYLL unpaid wage damages from 2017 to the date of entry of judgment.  Won Aff. ¶ 37; Song Aff. ¶ 33.  "Although it is 'well settled' that pre-judgment interest is not awardable under FLSA where liquidated damages are

awarded, 'NYLL permits the award of both liquidated damages and pre-judgment interest.'" *Gil v. Frantzis*, No. 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *15 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted as modified,* No. 17 CV 1520 ARR SJB, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018) (internal citation omitted). Here, Plaintiffs are entitled to an award of pre-judgment interest on their NYLL damages at a rate of 9% per year. *See id.* (citing N.Y. C.P.L.R. § 5004). "Where, as here, unpaid wages are 'incurred at various times, interest shall be computed . . . from a single reasonable intermediate date.'" *Id.* (citing N.Y. C.P.L.R. § 5001(b)). Court have discretion in determining a reasonable date from which to award pre-judgment interest and often use midpoint date of the NYLL claims sought in the litigation. *Id.* The reasonable intermediate date is this case for Plaintiff Won would, therefore, be August 24, 2019. The total amount ($15,530.66) at 9% a year for the period August 24, 2019 through January 25, 2022 results in $3,389.09 in interest for Won. The reasonable intermediate date is this case for Plaintiff Song would be August 8, 2018. The total amount ($10,028.12) at 9% a year for the period August 5, 2018 through January 25, 2022 results in $3.137.84 in interest for Song. Thus, the undersigned recommends that prejudgment interest be awarded in the total amount of $6,526.93.

## D.    Attorneys' Fees and Costs

Finally, Plaintiffs seek $25,625 in attorney's fees and $785 in costs for a total of $26,410. As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case –

creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)).  The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn*., 559 U.S. 542, 551 (2010) (emphasis in original).  "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.' *Id.* at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours).  This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190.  The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).  Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).  Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552.

In this case, Plaintiffs retained the services of Troy law PLLC.  According to the declaration submitted by John Troy ("Troy"), Plaintiffs seek reimbursement for legal services rendered by John Try, an attorney that has represented plaintiffs in FLSA for many years, at the rate of $600 per hour, Aaron Schweitzer, an associate since 2017 at the rate of $450 per hour, Preethi Kilaru, managing clerk, also an attorney, at the rate of  $200, and Maggie Huang, a certified public accountant at the rate of  $150.  According to the declaration, the Troy firm devoted 49.24 hours in connection with prosecuting the claims.  To support the request, Troy annexed contemporaneous billing records.  ECF No. 21.  His affidavit also describes the education and experience for each of the team members associated with this action.  The Court does not find these rates to be consistent with the rates awarded in this district in FLSA cases, and indeed, the Troy firm has been cautioned on the basis in the past. *See, e.g. Singh v. Meadow Hill Mobile,* 20 Civ. 3853 (CS) (AEK), 2021 U.S. Dist. LEXIS 150467, 2021 WL 4312673 (S.D.N.Y. Aug. 9, 2021) (the appropriate hourly rates for this matter are $325 for Troy, $175 for Schweitzer, and $75 for Kilaru" and Huang rate reduced to $100) *Jianmin Jin v. Shanghai Original*, *Inc*., No. 16-cv-5633, 2020 U.S. Dist. LEXIS 149337, 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020) (reducing hourly rate of Troy from $550 to $375, Schweitzer from $350 to $150,  and paralegals from $150 to $75); *Singh v. A&A Market Plaza, Inc*., No. 15-CV-7396 (AKT), 2019 U.S. Dist. LEXIS 171231, 2019 WL 4861882, at *11 (E.D.N.Y. Sept. 30, 2019); *see also Haifeng Xie v. Sakura Kai I Inc*., No. 17-CV-7509 (ILG) (JO), 2020 U.S. Dist. LEXIS 45734, 2020 WL 4587473, at *2 (E.D.N.Y. Mar. 12, 2020) (awarding hourly rates of $375 for Troy, $150 for Schweitzer, $150 for Byun, and $75 for Huang and Kilaru), report and recommendation adopted by, 2020 U.S. Dist. LEXIS 45734, 2020 WL 2569406 (E.D.N.Y. May 20, 2020).

Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in cases such as this. *See Juan v. Son of Polisi, Inc.,* No. 19-CV-04662 (LDH) (PK), 2021 U.S. Dist. LEXIS 14412, 2021 WL 2179344, at *7 (E.D.N.Y. Jan. 24, 2021) ("$350 per hour is a reasonable rate for an attorney with similar experience to [attorney] in an FLSA default judgment case that is routine in nature"); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20 CV4980 MKB RER, 2021 WL 4755704, at *5 (E.D.N.Y. Aug. 16, 2021), report and recommendation adopted sub nom*., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp.*, No. 20 CV 4980 MKB RER, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021).  Similarly, courts in this district generally award hourly rates of $200-$300 per hour for senior associates and $100-$200 per hour for junior associates. *See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co*., No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020).  One court "observed that Troy, himself, had not generally earned judicial approval of a rate at the top end of that range. Indeed, this Court noted that, while a few courts in the Eastern District of New York had chosen to award Troy $375 per hour for his work, . . . other courts both there and in this District had, only a few years earlier (and within the time frame relevant to the work performed on this case), opted to award Troy fees at the rate of $300 per hour - at the very low end of the identified range." *Wen v. Hair Party 24 Hours Inc*., No. 15cv10186 (ER) (DF), 2021 U.S. Dist. LEXIS 97828, 2021 WL 3375615, at *1 (S.D.N.Y. May 17, 2021), report and recommendation adopted by, 2021 U.S. Dist. LEXIS 124439, 2021 WL 2767152 (S.D.N.Y. July 2, 2021) (citation omitted). Thus, in accordance with the cases cited above, the

undersigned recommends that John Troy's rate be adjusted to $350.00, Aaron Schweitzer's rate be reduced to $150, and Preethi Kilaru's and Maggie Huang's rates be adjusted to $75.

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed.  "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08–CV–3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)).  "[M]ost cases in the default judgment context seek well under $10,000 in attorneys' fees because it doesn't take that many hours to obtain a default judgment." *Panora v. Deenora Corp*., 19-cv-7267 (BMC), 2021 U.S. Dist. LEXIS 231151, 2021 WL 5712119 (E.D.N.Y. Dec. 2, 2021) (citing *Thompson v. Hyun Suk Park*, No. 18-cv-0006, 2020 U.S. Dist. LEXIS 160666, 2020 WL 5822455, at *11 (E.D.N.Y. Sept. 1, 2020) (seeking $7,425 in fees); *Baizan Guerrero v. 79th St. Gourmet & Deli Inc*., No. 18-cv-04761, 2019 U.S. Dist. LEXIS 155382, 2019 WL 4889591, at *11 (E.D.N.Y. Sept. 10, 2019) (seeking $2,025 in fees); *Leon v. Zita Chen*, No. 16-cv-480, 2017 U.S. Dist. LEXIS 46765, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (seeking $5,063.05 in fees)); *see also Wen v. Hair Party 24 Hours Inc*., 2021 U.S. Dist. LEXIS 97828, at *65  (applying an across the board reduction of 30% to the time spent by the Troy firm, and stating "as a general matter, this Court notes that this matter involved straightforward claims under the FLSA and NYLL - claims with which Plaintiff's counsel purport to be well-acquainted, and as to which Defendants defaulted. Counsel should not have needed to spend over 70 hours on the case, when Defendants never appeared").

Here, the record reflects that the attorneys and paralegals spent a total of 49.24 hours on this matter in which the Defendants never appeared and no motion for conditional certification

was ever filed.  Attorneys' Fee Dec., Ex. A.  The time records submitted here describe what tasks were performed on behalf of Plaintiffs, the dates on which such tasks were performed, and the amount of time expended.  Specifically, Plaintiffs' time records reflect that Troy performed 35.9 hours of work; Schweitzer performed 7.86 hours of work; Huang performed 3.10 hours of work; and Kilaru performed 2.38 hours of work.  Attorneys' Fee Decl. ¶ 34.  "As the most experienced attorney with the highest billable rate, John Troy should not have been the one to perform the majority of the work in this matter."  *Singh v. Meadow Hill Mobile*, 2021 U.S. Dist. LEXIS 150467.  "In this relatively straightforward FLSA—NYLL case, staffing the case in such a manner warrants an across-the-board adjustment in the number of hours billed." *Agudelo v. E&D LLC*, No. 12-cv-960 (HB), 2013 U.S. Dist. LEXIS 50486, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013); *see also Jin v. Shanghai Original, Inc*., No. 16-cv-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) ("John Troy frequently billed for tasks that should have been handled by a less-experienced lawyer or support staff").  Additionally, the billing invoice provided by Plaintiffs' counsel shows "overbilling for routine tasks," *Jin*, 2020 WL 4783399, at *8, and "[e]xamples of grossly excessive billing," *Wan,* 2021 WL 1905036, at *7.  *See* Attorneys" Fee Dec., Ex. A

"Courts in this district have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours."  *Wen v. Hair Party 24 Hours Inc*., 2021 U.S. Dist. LEXIS 97828, at *65  (*citing Custodio v. Am. Chain Link & Const., Inc.,* No. 06cv7148 (GBD), 2014 U.S. Dist. LEXIS 3857, 2014 WL 116147, at *16 (S.D.N.Y. Jan. 13, 2014) (adopting report and recommendation) (applying 15% reduction for, *inter alia*, vagueness in billing records); *Congregation Rabbinical Coll. v. Village of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016)

(imposing a 30% reduction of total number of hours for which fees were sought, to account for, *inter alia*, vagueness of time entries*); see also Singh v. Meadow Hill Mobile*, 2021 U.S. Dist. LEXIS 150467("to account for the failure to delegate tasks to a more junior attorney, the billing of attorney hours for clerical and/or paralegal tasks, and excessive time spent on certain tasks, the Court will employ an across-the-board reduction in the number of hours billed by John Troy of 40 percent"). "Percentage reductions may also be appropriate where it appears, for other reasons, that the time expended by counsel was excessive." *Id.; Jin*, 2020 WL 4783399, at *8 (making a 40 percent across-the-board reduction in the number of compensable hours based on poor billing practices and the court's "experience with the Troy Law Firm over the course of this case"). Here, the work prepared was done carelessly, the appropriate minimum wage was misstated throughout the papers, providing the illusion of a claim where none existed, and the damage calculations provided were unusable. To account for the excessive billing by John Troy including billing for ministerial tasks such as preparation of the retainer agreement, the sloppiness of the work product and the vagueness of the time entries the Court recommends a 30 percent reduction in his time billed.

In accordance with the above recommendations, the undersigned respectfully recommends that the below fees be awarded:

| Individual | Hourly Rate Claimed | Hourly Rate Adjusted | Hours Billed Claimed | Hours Billed Adjusted | Adjusted Fee |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
| John Troy | $600 | $350 | 35.9 | 25.13 | $8795.50 |
| AaronSchweitzer | $450 | $150 | 7.86 | 7.86 | $1,179 |
| Maggie Huang | $150 | $75 | 3.1 | 3.1 | $232.5 |

| Preethi Kilaru | $200 | $75 | 2.38 | 2.38 | $178 |
|---|---|---|---|---|---|
| | | | | 38.47 | $10,385 |

Plaintiffs also seek costs in the amount of $785. Plaintiffs have provided a breakdown in costs and the undersigned finds this amount reasonable. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded attorneys' fees and costs in the amount of $785.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiffs shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
      January 25, 2022

                          _____/s/_____
                          ARLENE R. LINDSAY
                          United States Magistrate Judge